James H. Power
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
GLORY WEALTH SHIPPING PTE LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| GLORY WEALTH SHIPPING PTE LTD., <br><br> Plaintiff, <br><br> -against- <br><br> INDUSTRIAL CARRIERS, INC., WEAVER INVESTMENTS, INC., ITRO CORPORATION a/k/a ITIRO CORPORATION, BLUE COAST NAVIGATION SA, DIAMANT CO. LTD., SERGEY BARANSKY, and VLADIMIR TARASOV, <br><br> Defendants. | 08 Civ.8425 (RJH) <br><br> **SECOND AMENDED** <br> **VERIFIED COMPLAINT** |

Plaintiff, Glory Wealth Shipping Pte Ltd., ("Glory" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, for its Amended Verified complaint against Industrial Carriers, Inc., Weaver Investments, Inc., ITRO Corporation a/k/a ITIRO Corporation, Blue Coast Navigation SA, Diamant Co. Ltd., Sergey Baransky, and Vladimir Tarasov (collectively referred to herein as "Defendants"), alleges, upon information and belief, as follows:

1.      This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.      At all times material herein, Glory is and was a business entity organized and existing under the laws of Singapore having an address at 9 Temasek Boulevard 07-00, Suntec City Tower 2, Singapore 038989, Singapore.

3.      At all times material herein, defendant Industrial Carriers, Inc. ("Industrial") is, and was, a foreign corporation or business entity organized and existing under the laws of the Marshall Islands and upon information and belief at all material times herein, maintained its financial accounting and money management operations at its office in Glyfada, Greece and conducted operations for and on behalf of numerous alter-ego and shell companies from Industrial's office at 1, Chernomorskaya Str., Odessa, 65014, Ukraine.

**INDUSTRIAL'S ALLEGED PRESENCE IN NEW YORK -**

4.      Industrial did register as a foreign business corporation with the New York Secretary of State in 2005 through it's maritime counsel. However, this registration is open to question because it not appear Industrial ever intended to conduct any business in New York. Moreover, it is likely that Industrial will never conduct any business in New York as Industrial has reportedly expressed its intent to permanently close down its operations.

5.      Because Industrial had failed to file the New York State required biennial registration statement, Industrial is not "found" within the within the District for purposes of Rule B attachment. At the time of filing of this Amended Complaint, Industrial no longer intends to operate and is "winding up" its operations.

6. As admitted to by Industrial's counsel Lauren C. Davies, Industrial does not now nor has it ever maintained an office in New York; does not now nor has it ever had a telephone listing in New York; and does not now nor has it ever employed persons in New York.

7. Industrial has however used the Fedwire and CHIPS banking system in New York to facilitate the transfer of monies of Industrial to and from the named defendants thereby enabling Industrial to avoid its hire payment responsibilities under the various charter party contracts including the charter with Glory at issue here.

8. Upon information and belief, Industrial sought to avoid attachment orders by directing that funds of Industrial be transferred via the U.S. banking system in the name of one or more of the named defendants. As such, actions of Industrial and one or more of the named defendants taken abroad had a significant impact here in the U.S.

9. At the time of filing the original complaint on October 1, 2008, Industrial had acted as a Plaintiff in maritime cases filed in the Southern District twenty three times since 2005.

10. At the time of filing the original complaint on October 1, 2008, Industrial has been named as a defendant in two "Rule B" cases in the Southern District of New York. The first case, World Reach Shipping Ltd. v. Industrial Carriers, Inc., 06 CIV 3756 (Judge Buchwald), was filed in May 2006 and the second case, Star Legend S.A. v. Industrial Carriers, Inc., 07 CIV 6832 (Judge Scheindlin) was filed in September 2007.

11. In support of the "Rule B" attachment by World Reach Shipping Ltd., Laura C. Davies, then attorney for World Reach Shipping, Ltd. submitted an Affidavit in Support of Prayer for Maritime Attachment. Paragraph 6 of Ms. Davies' Affidavit stated:

> "Within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, mere registration and appointment of an agent for service of process does not satisfy the two-prong test to determine "presence" under Supplemental Rule B. *VTT Vulcan Petroleum v. Langham-Hill Petroleum, Inc.*, 684 F. Supp. 389,390 n.1 (S.D.N.Y. 1988), quoting *Seawind Compania, S.A.*, 320 F.2d 580, 583 (2d Cir. 1963). The presence test for corporations requires more than isolated business contacts within the jurisdiction. *Seawind Compania, S.A.*, 320 F.2d at 583. More specifically, the defendant must be able to accept process *and* be "engaged in sufficient activity in the district to subject it to jurisdiction.""

12. Despite being registered as a foreign business corporation in New York Judge Buchwald and Judge Scheindlin found that Industrial was nonetheless subject to "Rule B" attachment. Both Judges issued writs of maritime attachment and garnishment against Industrial.

**OTHER DEFENDANTS -**

13. At all material times herein, Weaver Investments, Inc. ("Weaver") was a Marshall Island's corporation with its principal place of business at 1, Chernomorskaya Str., Odessa, 65014, Ukraine.

14. At all material times herein, ITRO Corporation also known as ITIRO Corporation ("ITRO") was a corporation organized and existing under the laws of foreign nation believed to be the British Virgin Islands with its principal place of business at 1, Chernomorskaya Str., Odessa, 65014, Ukraine.

15. At all material times herein, Blue Coast Navigation SA ("Blue Coast") was a corporation organized and existing under the laws of foreign nation with its principal place of business at 1, Chernomorskaya Str., Odessa, 65014, Ukraine.

16. At all material times herein, Diamant Co. Ltd. ("Diamant") was a corporation organized and existing under the laws of foreign nation with its principal place of business at 1, Chernomorskaya Str., Odessa, 65014, Ukraine.

17. At all material times herein, defendant Sergey Baransky (sometimes referred or known as Sergiy Baranskiy) ("Baransky") was a foreign citizen domiciled in Ukraine and an owner and Director of Industrial, Weaver, ITRO, Blue Coast and Diamant.

18. At all material times herein, defendant Vladimir Tarasov ("Tarasov") was a foreign citizen domiciled in Ukraine and an owner and Director of Industrial, Weaver, ITRO, Blue Coast and Diamant.

**FACTUAL BACKGROUND OF LEGAL DISPUTE -**

19. On or about June 5, 2008, via fixture recap, Industrial time chartered from Glory the vessel M/V MINERAL CAPEASIA (the "Vessel") for a period of 12-13 months.

20. Glory, as owner, and Industrial, as charterer, entered into a time charter agreement pursuant to the New York Produce Exchange Form with Rider Clauses (collectively the "Charter").

21. Under the terms of the Charter, the daily charter hire rate required to be paid by Industrial to Glory was, and is, $183,000 per day payable 15 days in advance.

22. Industrial failed to pay the 4th installment of hire which became due on 17 August 2008.

23. Despite having been given proper notice and having been given additional days to pay the 4th installment of hire, Industrial has not made good on its obligation to pay.

5

24. Industrial similarly failed to pay the 5th installment of hire which became due on or about October 14, 2008.

25. Despite having been given proper notice of its failure to pay the 4th and 5th hire payments Industrial refused to make these payments as per the Charter.

26. Glory is now, and will continue to incur significant additional damages by reason of Industrial's repudiation of the entire Charter. On or about October 20, 2008, Industrial manifested and unwillingness and/or inability to perform under the Charter with Glory. Therefore, Glory has had no choice but to take action and secure damages for Industrial's repudiation of the Charter.

27. As of October 20, 2008, there are 231.70208 days remaining under the Charter. Industrial contracted to pay $183,000 per day in charter hire. Therefore, Glory will suffer an additional $48,401,480.00 in lost hire. However, Glory believes that it will be able to mitigate its damages somewhat by finding substitute cargo and or by re-chartering the vessel to another charterer. At present, Glory has determined that the maximum amount it could expect to obtain for the Vessel is $30,000 per day in light of the severely depressed bulk market. As such, Glory's losses through the remainder of the Charter are reasonably estimated to be $153,000 per day for a total of $35,458,036.35.

28. As a result of Industrial's breach for failure to pay hire, Glory has, at the time of filing this Amended Verified Complaint, incurred damages in the form of lost hire in an amount reasonably estimated to be $5,285,111.30 (for the 4th and 5th hire payments) plus $35,458,036.35 (for the loss of hire through the remainder of the Charter period). The total loss Glory is expected to incur is $40,743,147.00 (excluding interest, costs and attorneys' fees).

29. Upon information and belief, although Industrial was the party named in the charter, Industrial used the services, funds, manpower, technical knowledge and finances of the other defendants in order to meet the obligations required if it under the charter.

30. Upon information and belief, when Industrial determined that it no longer wished to honor the agreement made between it and Glory, Industrial acted jointly with one or more of its related alter ego companies named herein as defendants to divert, hide, channel, and otherwise conspire to deprive Glory of hire due under the charter.

31. Despite making false claims that Industrial was unable to pay the sums due under the Charter, Industrial directed that payments due to it from Industrial's other various maritime business ventures be diverted to one or more of the named defendants.

32. As such, one or more of the named defendants currently holds, maintains, possesses, or otherwise controls funds that rightfully belong to Glory.

33. Glory is entitled to recover the amounts due and owing under the Charter from each and every one of the named defendants until such time as Glory is made whole.

34. The Charter is governed by English law, which routinely allows for costs, including a reasonable allowance for attorney's fees. The Charter specifies London arbitration. Only Glory and Industrial have agreed to arbitrate their disputes.

35. Upon information and belief it will take two years to bring this dispute to conclusion, resulting in the following estimated interest and attorneys' fees and costs:

| | |
|---|---|
| Interest: | $9,168,960.03 (3 years at 7% annum compounded annually from October 20, 2008) |
| Arbitrator's fees | $ 75,000.00 |

| | |
|---|---|
| Attorneys' fees | $300,000.00 |
| Principal Claim: | $40,743,147.00 |
| Total Damages Sought: | **$50,287,107.03** |

**ALTER EGO ALLEGATIONS -**

36. At all times material herein, defendant Industrial acted through is alter ego and "shell" companies to conduct business including, but not limited to, business related to the time-chartering of vessels - like the M/V MINERAL CAPEASIA at issue in this matter.

37. Industrial is majority owned by two Ukrainian individuals, Baransky (believed to be sometimes spelt Baranskiy) and Tarasov.

38. Industrial was establish in the late 1990's to conduct a wide range of shipping operations and to act as a front company to existing and future shipping operations of companies owned and/or controlled by Baransky, Tarasov, and an inner nucleus of investors.

39. At the time of filing this Amended Verified Complaint, there were no less than five alter ego companies being controlled and directed by Baransky and/or Tarasov for the sole benefit of Baransky and/or Tarasov and a small inner nucleus of investors with little or no regard to corporate formalities in that these entities were acting as paying agents for Industrial.

40. At all times material herein, Industrial maintained bank accounts at the following banks in Greece: Alfa Bank, HSBC, EFG Eurobank and Athens Bank.

41. Industrial's alter ego companies similarly maintained bank accounts at one or more of these same banks. Disregarding the corporate structure of each of these companies

8

Baransky and Tarasov directed that funds be transferred by and between these banks and bank accounts.

42. The many transfers between these alter ego companies was overseen by a Industrial's finance director Vitaliy Cherepanov.

43. Specifically, in the last several weeks, Vilaliy Cherepanov oversaw numerous final and partial settlement of Industrial's debts to the owners of the 40-50 vessels under charter by Industrial and the alter ego defendants.

44. Upon information and belief, based on maritime industry reports, many of these settlements were paid from accounts other than those of Industrial.

45. As shown below, Industrial's corporate structure was an intricate weave of companies, many of which changed capacities randomly, and whose structures were designed and operated to defeat creditors and avoid liabilities.

46. One of the primary alter ego companies formed at the direction of Baransky was Weaver. Weaver was incorporated on May 31, 2006, as a Marshall Islands corporation for the sole purpose of enabling Industrial at the direction of Baransky and Tarasov to funnel and divert payments by and between Industrial and the other numerous alter ego companies and to make and receive payments on behalf of Industrial for the purposes of avoiding Rule B attachment and to enable Industrial and Baransky to "hide" funds earned from chartering and operating vessels.

47. During the last weeks of September and continuing through to the date of this Amended Verified Complaint, Industrial has made hire payments and accepted hire payments through Weaver. Specific directions have been given by Industrial to make charter hire

payments directly to Weaver in order to avoid attachment and to provide a "shell" company to increase Industrial's ability to "hide" funds legally belonging to Industrial.

48. Industrial and Weaver, at the direction of Baransky and Tarasov, often disregarded corporate formality requirements at various times beginning September 2006 when Weaver was first incorporated in an attempt to "hide" Industrial's funds from maritime creditors. At the direction of Baransky and/or Tarasov, Weaver acted as paying agent for Industrial.

49. It is alleged that beginning in early September 2008, if not before, that (1) Industrial knew that its business was in serious trouble and, Industrial, at the direction of Baransky and Tarasov disregarded all corporate formality requirements imposed under U.S. law and the laws of foreign jurisdictions to which Industrial is subject, and (2) engaged in a scheme of diverting funds destined and belonging to Industrial to Weaver and other alter ego companies in order to avoid maritime creditors including Glory.

50. Industrial was allegedly providing instructions to various charterers in September and October 2008 directing that funds be transferred to Weaver's bank account at HSBC in Athens, Greece. What made this extraordinary is that Weaver is not believed to have been a party to the charter agreements and therefore had no right to the monies being wired. It is not general practice in the maritime community, nor anywhere else, for that matter, for independent companies to allow other companies to receive payments on their behalf when not a party to the underlying Charter and no shipmanagement agreement is involved (which is the case here).

51. Specifically Industrial gave instructions to charterers owing money for hire to Industrial to make the required payments to Weaver's bank account. The wire transfer payment instructions given were as follows:

> HSBC BANK PLC
> 93, AKTI MIAOULI STR PRAEUS BRANCH, GREECE.
> SWIFT NO.: [REDACTED]
> IBAN NO.: [REDACTED]
> BENEFICIARY: WEAVER INVESTMENTS INC.
> ACCOUNT NO.: [REDACTED]
> CORRESPONDENT BANK: HSBC BANK USA
> SWIFT NO.: [REDRAFT]
> ACC. [REDACTED] OF HSBC BANK, PIREAUS, GREECE.

52. Upon information and belief, defendant Weaver is the alter ego of defendant Industrial because Industrial so dominates, controls, and disregards Weaver's corporate form to the extent that Weaver is actually carrying on Industrial's business as if the same were its own and vice versa.

53. Weaver and Industrial are partners and/or joint venturers.

54. Defendant ITRO was formed at the direction of Baransky and Tarasov for the purpose of chartering vessels to conduct Industrial's business, for the purpose of creating a vehicle to pay the debts of Industrial and to receive funds owed to Industrial or any of the other defendant companies.

55. Upon information and belief, Baransky and Tarasov control all business operations of ITRO and have put in place as a "titular" director of ITRO - a Mr. Artyom (or Artem) Mashutin. Mr. Mashutin was a former chartering manager for Industrial. In or about the end of August or beginning of September 2008, it is believed Mr. Mashutin was instructed by Messrs. Baransky and/or Tarasov to transfer from Industrial to alter ego company ITRO.

56. Upon information and belief based on maritime industry reports given by charterers formerly or currently doing business with Industrial, ITRO has been jointly operating out of Industrial's office at 1, Chernomorskaya Str., Odessa, 65014, Ukraine.

57. Upon information and belief, Baransky and Tarasov, faced with a "portfolio" of "bad" charters took action to segregate "good" charters from "bad" charters. The "good" charters were sold or transferred to ITRO and/or Blue Coast and/or Weaver and the "bad" charters were left with Industrial in order to limit the exposure faced by companies within the control of Baransky and Tarasov.

58. Upon information and belief, several major charterers have included ITRO on watchlists, and consider ITRO an instrumentality of Industrial and/or Baransky and Tarasov.

59. ITRO and Industrial are partners and/or joint venturers.

60. Upon information and belief, defendant ITRO is the alter ego of defendant Industrial because Industrial so dominates, controls, and disregards ITRO's corporate form to the extent that ITRO is actually carrying on Industrial's business as if the same were its own and vice versa.

61. Upon information and belief based on maritime industry reports given by charterers formerly or currently doing business with Industrial, Blue Coast has been jointly operating out of Industrial's office at 1, Chernomorskaya Str., Odessa, 65014, Ukraine.

62. Upon information and belief, several major charterers have included Blue Coast on watchlists, and consider Blue Coast to be an instrumentality of Industrial and/or Baransky and Tarasov.

63. Upon information and belief, Industrial has used Blue Coast and Blue Coast has used Industrial as a "shell" or "pass through" corporation in which to charter ships, in order to avoid liability.

64. Defendant Blue Coast Navigation SA ("Blue Coast") has been named as a defendant in a maritime "Rule B" action in the Southern District of New York on one occasion. Blue Coast was named as an alter ego defendant in World Reach Shipping Ltd. v. Industrial Carriers, Inc. and Blue Coast Navigation SA, 06 CIV 3756 (Judge Buchwald).

65. Laura C. Davies, counsel for defendant Industrial in this case appeared on behalf of the plaintiff in World Reach Shipping Ltd. Based on sworn affidavits and other submitted evidence, counsel for World Reach Shipping, Ltd. put forth sufficient credible evidence establishing that Industrial and Blue Coast were alter ego companies. Based upon the various submissions by World Reach Shipping, Inc., Judge Buchwald issued an Ex Parte Order for Process of Maritime Attachment against both Industrial Carriers, Inc. and Blue Coast Navigation SA.

66. Blue Coast has, from time to time, made payments on Industrial's behalf even though Industrial was the only named charterer in the charter party contract.

67. Blue Coast and Industrial are partners and/or joint venturers.

68. Upon information and belief, defendant Blue Coast is the alter ego of defendant Industrial because Industrial so dominates, controls, and disregards Blue Coast's corporate form to the extent that Blue Coast is actually carrying on Industrial's business as if the same were its own and vice versa.

69. Based on published web pages, defendant Diamant has been jointly operating out of Industrial's office at 1, Chernomorskaya Str., Odessa, 65014, Ukraine.

70. Based upon published web pages, Baransky is a Director of Diamant and Diamant is a managing agent for Industrial.

71. Upon information and belief, Industrial has used Diamant and Diamant has used Industrial (or at times the other corporate defendants) as a "shell" or "pass through" corporation in which to charter ships, make payments for maritime business operations, receive payments for charter hire or other maritime business operations in order to avoid liability.

72. Upon information and belief, Diamant has, from time to time, made payments on Industrial's behalf despite having no obligation to do so.

73. Diamant are partners and/or joint venturers controlled by and used for the furtherance of Baransky's and/or Tarasov's business ventures.

74. Upon information and belief, defendant Diamant is the alter ego of defendant Industrial because Industrial so dominates, controls, and disregards Diamant's corporate form to the extent that Diamant is actually carrying on Industrial's business as if the same were its own and vice versa.

75. Defendant Baransky is an individual who so dominates, controls the corporate form of defendants Industrial, Weaver, ITRO, Blue Coast and Diamant, that Baransky is actually carrying on the business of these defendant's as if it were his own.

76. Defendant Tarasov is an individual who so dominates, controls the corporate form of defendants Industrial, Weaver, ITRO, Blue Coast and Diamant, that Baransky is actually carrying on the business of these defendant's as if it were his own.

77. Defendants Industrial, Weaver, ITRO, Blue Coast, Diamant, Baransky and Tarasov are not found within the Southern District of New York but do have assets, goods or chattels within the jurisdiction, to wit: funds or accounts held in the name of Industrial Carriers, Inc., Weaver Investments, Inc., ITRO Corporation, Blue Coast Navigation Sa, Diamant Co. Ltd. with, upon information and belief, the financial institutions listed in Schedule A annexed to this Second Amended Complaint.

78. While all disputes arising out of the Charter are to be arbitrated in London, the action herein is submitted in accordance with Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure as well as 9 U.S.C. §8, is not and cannot be considered a waiver of the Charter's arbitration clause. It is however alleged herein that Industrial has acted in a manner inconsistent with its agreement to arbitrate disputes arising from the charter party. Glory therefore, reserves its right to seek recourse for the claims herein in any forum that Industrial or any of its alter ego companies are located.

**WHEREFORE**, Glory Wealth Shipping Pte Ltd., prays:

1. That a summons with process of attachment and garnishment may issue against the defendants, Industrial Carriers, Inc., Weaver Investments, Inc., ITRO Corporation a/k/a ITIRO Corporation, Blue Coast Navigation SA, Diamant Co. Ltd., Sergey Baransky, and Vladimir Tarasov; and if defendants cannot be found, then that its goods, chattels and credits within the district, and particularly all bank accounts and other property of Industrial Carriers,

Inc., Weaver Investments, Inc., ITRO Corporation a/k/a ITIRO Corporation, Blue Coast Navigation SA, Diamant Co. Ltd., Sergey Baransky, and Vladimir Tarasov with the financial institutions listed in Schedule A, may be attached in an amount sufficient to answer plaintiff's claim;

2. That defendants Industrial Carriers, Inc., Weaver Investments, Inc., ITRO Corporation a/k/a ITIRO Corporation, Blue Coast Navigation SA, Diamant Co. Ltd., Sergey Baransky, and Vladimir Tarasov and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3. That judgment be entered in favor of Glory Wealth Shipping Pte Ltd. against Industrial Carriers, Inc., Weaver Investments, Inc., ITRO Corporation a/k/a ITIRO Corporation, Blue Coast Navigation SA, Diamant Co. Ltd., Sergey Baransky, and Vladimir Tarasov in the amount of US $50,287,107.03 (including estimated interest, expenses and attorneys' fees); and,

4. That this Court grant Glory Wealth Shipping Pte Ltd. such other and further relief which it may deem just and proper.

Dated: New York, New York
October 30th, 2008

HOLLAND & KNIGHT LLP

By: _____
James H. Power
Lissa D. Schaupp
195 Broadway
New York, NY 10007-3189
Tel: (212) 513-3200
Fax: (212) 385-9010

*Attorneys for Plaintiff*
*Glory Wealth Shipping Pte Ltd.*

# VERIFICATION

STATE OF NEW YORK          )
                                      :ss.:
COUNTY OF NEW YORK       )

JAMES H. POWER, being duly sworn, deposes and says:

    I am senior counsel with the firm of Holland & Knight LLP, counsel for Glory Wealth Shipping Pte Ltd. ("Glory"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Glory and corresponded with Glory's representatives regarding this matter. I am authorized by Glory to make this verification, and the reason for my making it as opposed to an officer or director of Glory is that there are none within the jurisdiction of this Honorable Court.

                                                              _____
                                                                            James H. Power

Sworn to before me this
30th day of October, 2008

_____
Notary Public

                    RUDY D. GREEN
           Notary Public, State of New York
                  No. 02GR4952723
               Qualified in Queens County
# 5763563_v1     Certificate Filed in New York County
        Commission Expires February 26, 2010

# **SCHEDULE A**

Bank of America, N.A., Bank of China, The Bank of New York, Citibank, N.A.
Deutsche Bank Trust Company Americas, HSBC Bank USA, N.A.
JPMorgan Chase Bank, N.A., UBS AG, Wachovia Bank, N.A., Société Générale,
Standard Chartered Bank, BNP Paribas, Calyon Investment Bank, American Express
Bank, Commerzbank, ABN Amro Bank, Bank Leumi USA, Banco Popular, Alpha Bank,
EFG Eurobank, Athens Bank.

# 5730765_v1